IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

**UNITED STATES OF AMERICA**,

        Plaintiff,

vs.

**JO SCHERMERHORN**,

        Defendant.

Case No. 3:10-CR-00196-KI-5

OPINION AND ORDER ON
MOTION TO SUPPRESS

    Dwight C. Holton
    United States Attorney
    District of Oregon
    Michelle Holman Kerin
    Allan M. Garten
    Assistant United States Attorneys
    1000 SW Third Avenue, Suite 600
    Portland, Oregon  97204-2902

        Attorneys for Plaintiff

Page 1 - OPINION AND ORDER ON MOTION TO SUPPRESS

      Marc D. Blackman
      Ransom Blackman LLP
      1400 Congress Center
      1001 SW Fifth Avenue
      Portland, Oregon  97204-1144

           Attorney for Defendant Jo Schermerhorn

KING, Judge:

      Defendant Jo Schermerhorn, along with four other defendants, is charged with conspiracy to commit wire fraud, wire fraud, money laundering and making false statements to a bank in obtaining financing to buy and remodel property on River Road in Oregon City.  Pending before me is Schermerhorn's Motion for Hearing on Voluntariness of Statements [88].  I held an evidentiary hearing on June 17, 2011, at the end of which Schermerhorn moved to suppress her statements as involuntary.  For the following reasons, I deny that request.

## FACTS

      The following facts were adduced at an evidentiary hearing:

      Around 9:00 AM on August 3, 2009, Abraham Smith, an Internal Revenue Service Criminal Investigation Special Agent, and United States Postal Inspector Walt Yohn arrived at Schermerhorn's residence to question her about the mortgage fraud they were investigating at Lighthouse Financial.  When they arrived, no one answered the door but they found a truck parked outside.  The agents learned that the owner of the truck had the same address as Schermerhorn; Agent Smith obtained the owner's phone number, called, and left a message introducing himself as an IRS agent wishing to question Schermerhorn about a criminal investigation.  He does not remember specifically what he said, but he remembers he gave

sufficient information so that the individual would know he was not a telemarketer and that the matter was an important and somewhat urgent one. Shortly thereafter, Schermerhorn returned the agent's call. Agent Smith testified that he probably introduced himself again and indicated he was investigating mortgage fraud at Lighthouse Financial, but he does not actually remember what he said. Schermerhorn immediately invited him to her house.

The agents arrived at Schermerhorn's home in plain clothes with their service weapons hidden. They showed her their badges, she put her dog in a back room, and she invited them into her home office where she sat behind her desk. Agent Smith asked the questions. He told her about the nature of the investigation, which was the mortgage fraud they were probing at Lighthouse Financial. Unsolicited, she informed the agents early in the interview that an FBI agent had questioned her in 2008 about loans issued by US Funding.[1] She never asked if she was in trouble or if she was a target of the investigation, although Agent Smith testified no, she was not, as the information he had learned so far did not indicate her involvement one way or the other. Agent Smith described the conversation as informal and friendly, and he did not feel he needed to coax or persuade her to answer his questions. Schermerhorn repeatedly referenced material on her computer in answering the agents' questions. She never reported feeling unwell or asked that the questioning stop.

After covering numerous topics related to Lighthouse Financial, such as Schermerhorn's employment as a loan officer there, Schermerhorn's interactions with other Lighthouse

---

[1] It is unclear to me whether this is a different company from United Funding Group, the entity for which, in addition to Lighthouse Financial, Schermerhorn told Agent Smith she had prepared accountant review letters.

Page 3 - OPINION AND ORDER ON MOTION TO SUPPRESS

employees, and the cash back transactions[2] in which the company had been engaging, the agents finally introduced the topic of the accountant review letter they had received from Darlene Endicott, the straw purchaser of the property on River Road. Schermerhorn had prepared the accountant review letter in support of Endicott's application for a loan, and in it Schermerhorn indicated she had reviewed Endicott's tax returns and that Endicott had earned self-employment income. In fact, Endicott was not self-employed and the agents knew before their interview with Schermerhorn that the income Endicott reported was false.[3] The letter carried Schermerhorn's company name, Cascade Financial, as well as her IRS CAF number and her Oregon tax preparer license number. Agent Smith testified he did not focus on the fact that she was an IRS enrolled agent or a licensed tax preparer.

Schermerhorn informed Agent Smith and Inspector Yohn that between 2004 and 2007, she had completed 500 review letters for Lighthouse and United Funding Group. She reviewed tax returns for about 150 of the 500 letters. She prepared about 50 review letters for co-defendant Chadwick Amsden, a loan officer at Lighthouse Financial, but did not review tax returns for any of them. She did not remember Endicott but confirmed she had not prepared Endicott's tax returns. Agent Smith testified to being surprised by the scope of her involvement and her willingness to include herself in what he called regrettable incidents. Agent Smith

---

[2]Agent Smith testified that cash back transactions involve an agreement between the seller and buyer where the buyer obtains financing for more than the buyer actually pays the seller. The surplus is returned to the buyer at closing.

[3]The loan application indicated Endicott made $24,000 per month. In fact, Endicott worked at OHSU and made $45,000 a year.

Page 4 - OPINION AND ORDER ON MOTION TO SUPPRESS

neglected to consider that although Schermerhorn may not have "reviewed" tax returns, she may have "prepared" them. The previous year her company had prepared 1,720 tax returns.

The interview lasted from about 9:00 AM to 11:45 AM. The agents never gave her Miranda warnings.

Schermerhorn has been licensed to prepare taxes in Oregon since 1983. She has bachelor degrees in economics and political science with minors in business, finance and accounting from California State University Bakersfield. She also completed almost three years of law school at California Western School of Law in San Diego and later earned a paralegal degree from the University of Georgia. At the time of the 2009 interview at issue here, she was taking courses from the University of Phoenix for a Masters of Accountancy degree.

## LEGAL STANDARDS

The government must establish the voluntariness of a confession by a preponderance of the evidence. United States v. Kelley, 953 F.2d 562, 564 (9th Cir. 1992). When considering whether a confession is voluntary, a court must consider the totality of the circumstances, including the characteristics of the accused and the details of the interrogation. Id. The focus of the analysis is on whether the individual answering questions is coherent, alert, and able to answer questions. Id. at 565.

Importantly, although an individual's mental state is relevant, "[c]oercive police activity is 'a necessary predicate' to finding a confession involuntary." Id. (quoting Colorado v. Connelly, 479 U.S. 157, 167 (1986)). The test of voluntariness is well established: "is the confession the product of an essentially free and unconstrained choice by its maker? . . . The line of distinction is that at which governing self-direction is lost *and compulsion, of whatever*

*nature or however infused,* propels or helps to propel the confession." Henry v. Kernan, 197 F.3d 1021, 1027 (9th Cir. 1999) (quoting Culombe v. Connecticut, 367 U.S. 568, 602 (1961) (alteration in the original)).

Overreaching includes lengthy questioning, deprivation of food or sleep, physical threats of harm, and psychological persuasion. Kelley, 953 F.2d at 565. A confession obtained by physical violence is *per se* involuntary; a confession obtained by psychological coercion is not. United States v. Miller, 984 F.2d 1028, 1030 (9th Cir. 1993). When there is alleged psychological coercion, the issue is whether the defendant's will was overborne when he confessed. Id. at 1031. Deception does not necessarily render a confession involuntary, "as long as the decision is a product of the suspect's own balancing of competing considerations[.]" Id. (citing Frazier v. Cupp, 394 U.S. 731, 739 (1969) (police misrepresentations about an accomplice's statements relevant, but insufficient to make voluntary confession inadmissible)) (quoting Miller v. Fenton, 796 F.2d 598, 605 (3d Cir. 1986) (ploys, including lies, acceptable so long as not "so manipulative or coercive" as to "deprive [individual] of his ability to make an unconstrained autonomous decision to confess")).

## DISCUSSION

Schermerhorn believes the evidence shows the following: (1) as an IRS enrolled tax preparer, she relied on the IRS's good graces for her job; (2) the agents failed to tell her why they were talking with her–specifically that they had the accountant review letter she had prepared for Endicott; and (3) they failed to give her Miranda warnings.[4] Schermerhorn is particularly

---

[4]Schermerhorn did not testify but her counsel argued in briefing that she had not been feeling well for some months at the time of the interview and doctors were in the process of diagnosing symptoms of depression, bone soreness, fatigue, insomnia, and gastro-intestinal pain.

Page 6 - OPINION AND ORDER ON MOTION TO SUPPRESS

disturbed by the fact that the agents waited to discuss the accountant review letter, and believes their delay lulled her into a false sense of security and undermined the voluntariness of her statements. As a result, she argues, her statements were not voluntary.

The government has met its burden of showing Schermerhorn's statements were voluntary. First, <u>Miranda</u> warnings are unnecessary in a non-custodial situation, and Schermerhorn does not argue she was in custody. <u>Beckwith v. United States</u>, 425 U.S. 341, 347 (1976). Additionally, the evidence reflects that the agents did not threaten Schermerhorn, they did not promise her anything, and they did not have control over her employment as a licensed tax preparer. Instead, the agents persuasively testified that Schermerhorn invited them into her house, after being informed about the purpose of their visit–which was to ask her questions in furtherance of a criminal investigation into mortgage fraud at Lighthouse Financial.

Schermerhorn takes issue with the fact that the agents did not immediately disclose their knowledge about the accountant review letter she had prepared for Endicott, arguing that the agents induced her to talk by directing her attention to other topics first. As an educated professional involved in Lighthouse Financial dealings, however, the agents' repeated references to Lighthouse Financial and to mortgage fraud provided Schermerhorn with sufficient information to alert her to the purpose of their visit. I do not see any misrepresentation on the part of the agents, but even if it was in any way underhanded, it is insufficient to render her statements involuntary. See <u>Frazier</u>, 394 U.S. at 739 (police misrepresentation relevant but insufficient to render statements involuntary). Additionally, although it is not entirely clear from

---

In January 2010, she was diagnosed with Stage Four breast cancer. Even if there were evidence in the record on Schermerhorn's illness, there is no evidence it affected her ability to make a decision about whether to talk with the agents.

Page 7 - OPINION AND ORDER ON MOTION TO SUPPRESS

the record, it appears that Schermerhorn made all of the incriminating statements she wishes to have suppressed after the agents informed her about the Endicott letter. Accordingly, there is no evidence Schermerhorn was negatively affected by the agents' delay in raising the matter.

In short, the interview was cordial, Schermerhorn indicated a desire to answer Agent Smith's questions, there was no evidence the agents held her IRS credentials over her head, she volunteered information without needing coaxing, and repeatedly referenced her computer in order to completely answer Agent Smith's questions. She did not complain about feeling unwell and did not ask to postpone or end the interview. Considering the totality of the circumstances, the government has established the voluntariness of Schermerhorn's statements by a preponderance of the evidence.

## CONCLUSION

For the foregoing reasons, I grant Schermerhorn's Motion for Hearing on Voluntariness of Statements [88] in part in that I held an evidentiary hearing on June 17, 2011, but I deny her motion to suppress her statements as involuntary.

IT IS SO ORDERED.

Dated this      28th      day of June, 2011.

                                             /s/ Garr M. King
                                            Garr M. King
                                            United States District Judge